OPINION
{¶ 1} Appellant, Garry A. Hall ("Hall"), appeals the judgment entered by the Portage County Court of Common Pleas. Following a jury trial, Hall was convicted of one count of sexual battery and sentenced to three years in prison.
 {¶ 2} The alleged victim in this case ("the victim") began working at the company where Hall was employed. After the victim had been working there about a week, she decided to go out for drinks with Hall, after work. The two went to Scorcher's, a bar in Streetsboro, Ohio. They stayed at the bar from about 5:00 p.m. until 9:00 p.m. The victim testified that she had a few drinks during this time. Specifically, she stated she had a Long Island iced tea and two margaritas.
 {¶ 3} The victim became very ill. She vomited in the restroom of the bar. A patron of the bar, Marcella L. Robertson ("Marcella"), helped Hall take the victim out of the bar. Hall placed the victim in his truck, with the help of Marcella.
 {¶ 4} Hall testified that he believed he was too intoxicated to drive the victim home, so he checked into a hotel across the street from Scorcher's. After he checked into the room, he left the victim in the room and went to a gas station, where he purchased beer and disposable cameras.
 {¶ 5} Upon arriving in the hotel room, Hall and the victim both testified that Hall called the victim's mother. Hall informed her that the victim would not be coming home because she was drunk. The victim testified that she talked to her mother after Hall was finished.
 {¶ 6} Later, while still in the hotel room, Hall engaged in sexual intercourse with the victim. Hall testified that this was consensual. However, the victim testified that she was in a "dream-like state," could not speak, and did not consent. During the sexual intercourse, the victim's mother called the hotel room, and the victim informed her that she had been raped. Her mother then called the police. The police arrived at the hotel and arrested Hall.
 {¶ 7} On October 19, 2001, Hall was indicted with two counts of rape in violation of R.C. 2907.02(A)(2). This section of the Revised Code prohibits sexual conduct that is compelled by force. On January 18, 2002, just days before the start of trial, an additional charge was added, by way of a secret indictment, against Hall. Defense counsel was notified of this amendment on the following day, a Friday. The amended charge was sexual battery, in violation of R.C. 2907.03(A)(2). This statute prohibits a person from engaging in sexual conduct with another person when the offender knows that the other person's ability to appraise the nature of or control their conduct is "substantially impaired."
 {¶ 8} On January 23, 2002, the day of trial, defense counsel moved to strike the amended indictment or, in the alternative, for a continuance to prepare for the added charge. That afternoon, prior to jury selection, the court discussed the motion with counsel. The trial court offered to continue the trial until the following day. Defense counsel rejected this offer, as it would not have been enough time. The court also offered to allow the trial to proceed, but to allow the defense to call a medical expert a week after the rest of the evidence was presented. Defense counsel also rejected this offer, as he was unsure that one week would be enough time to secure an expert.
 {¶ 9} The case proceeded to trial, and the jury found Hall guilty of sexual battery. The jury was unable to reach a verdict on the rape charges, and the court declared a mistrial regarding those counts. Hall was retried on the rape charges, and the second jury returned not guilty verdicts on both counts of rape. Hall was sentenced to a three-year term on the sexual battery conviction.
 {¶ 10} Hall timely appeals the judgment of the trial court. He advances four assignments of error on appeal. Hall's first assignment of error is:
 {¶ 11} "The court of common pleas' decision not to continue the appellant's trial after the state filed an amended indictment only one business day before the trial began was judicial error which prohibited the appellant and his trial counsel from adequately preparing for this new charge."
 {¶ 12} The Supreme Court of Ohio has held that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion."[1] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable."[2] In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice."[3]
 {¶ 13} Hall moved for a continuance because the state amended the indictment. Crim.R. 7(D) governs amended indictments, and states, in pertinent part:
 {¶ 14} "If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury." (Emphasis added.)
 {¶ 15} Accordingly, a defendant is entitled to both a discharge of the jury and to a continuance if the amendment was made to the substance of the indictment and the defendant is prejudiced or misled by the amendment.[4]
 {¶ 16} The Supreme Court of Ohio has held that adding an essential element to the indictment necessarily changes the substance of the indictment.[5] Therefore, the addition of an entirely new crime with different elements to the indictment constitutes a change of substance.
 {¶ 17} Hall was prejudiced by this amendment, because he was facing a completely new charge. The state changed the entire theory of the case just days before the trial. Initially, the defense had to show that Hall did not force the victim to engage in sexual conduct to defend against the rape charge. However, with the amended indictment, Hall had to show that the victim was not "substantially impaired" when they engaged in sexual conduct.
 {¶ 18} The term "substantially impaired" is not defined in the Revised Code, thus, it must be given the meaning generally understood in common usage.[6] The Supreme Court of Ohio has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct."[7]
 {¶ 19} The state asserts that medical evidence is not required to prove that the victim was substantially impaired and, therefore, the defense did not need to offer medical evidence to show that the victim was not substantially impaired. In the case In re Sechler, this court held that there was sufficient evidence that the victim was substantially impaired based on both expert and non-expert testimony.[8] We agree that medical evidence is not necessary for the state to show that the victim was substantially impaired. However, medical evidence is one possible way that the defense could have contradicted the state's evidence. The defense should have been given the opportunity to at least explore this option.
 {¶ 20} The trial court offered Hall two options during the discussion regarding the motion for continuance. The first option was to continue the trial until the next day. A one-day continuance would have offered little, if any, benefit to the defense in the preparation of an entirely new defense and to explore the possibility of consulting with experts.
 {¶ 21} The second option was to proceed with all other aspects of the trial, then to have a one-week break in the trial, thereafter the defense could present any expert witnesses at that time. There are numerous problems with the second option. The first is that defense counsel would not have the opportunity to consult with an expert before preparing his opening statement. Likewise, counsel would not have the benefit of the consultation when cross-examining the state's witnesses. The jury would have to take a one-week break, which could affect their ability to accurately remember the evidence presented. Finally, one week was not an adequate amount of time, considering that the present trial was scheduled for two days, additional time commitments to other clients on counsel's calendar, and possible scheduling conflicts of the potential expert(s).
 {¶ 22} While the trial court did offer the defense two options regarding the continuance, neither of these options was a realistic means for the defense to adequately prepare a defense. This is especially true due to the severity of the charges against Hall. Thus, neither of the trial court's options was a "reasonable" continuance, as is required by Crim.R. 7(D).
 {¶ 23} While we acknowledge the importance of the trial court's docket, the failure to grant a reasonable continuance was inherently unfair. We offer no opinion as to what, if any, additional evidence may have been offered by the defense had the continuance been offered. However, a reasonable continuance would have given defense counsel time to consult one or more experts to discuss possible defense strategies to show that the victim was not "substantially impaired."
 {¶ 24} The trial court abused its discretion by failing to grant a reasonable continuance due to the amended indictment against Hall. Hall's first assignment of error has merit.
 {¶ 25} Hall's second assignment of error is:
 {¶ 26} "[Garry] Hall's defense counsel was ineffective in not returning one week after trial to present expert testimony against the sexual battery charge or accepting the court's offer for a one week continuance, even though he had the explicit permission of the trial court to do so. His failure to present said evidence made the appellant's legal representation ineffective."
 {¶ 27} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[9]
 {¶ 28} As stated in our analysis of Hall's first assignment of error, the offers set forth by the court in response to Hall's motion for continuance were not reasonable, considering the severity of the charges against Hall. Accordingly, Hall's trial counsel's performance did not fall below an objective standard of reasonable representation for failing to accept either offer from the trial court.
 {¶ 29} Hall's second assignment of error is without merit.
 {¶ 30} Hall's third assignment of error is:
 {¶ 31} "Two photographs offered by the state and admitted into evidence during the appellant's trial violate Ohio Evidentiary Rule 403."
 {¶ 32} Hall claims he was prejudiced by the admission of state's exhibits 1M and 1N. These exhibits were two photographs of the victim's genitals taken by Hall with a disposable camera found in the hotel room. Hall testified that the victim had indicated to him that she enjoyed being photographed in sexual positions, and this is why he purchased the cameras and took the pictures.
 {¶ 33} Evid.R. 403 provides, in part:
 {¶ 34} "(A) Exclusion mandatory.
 {¶ 35} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 36} The admission of photographs is a decision left to the sound discretion of the trial court.[10]
 {¶ 37} There was minimal probative value in the admission of the photographs. Hall was charged with rape and sexual battery, both of which require the state to prove that sexual conduct occurred.[11] We note that there was no evidence presented, nor does a review of the photographs reveal, that there were any marks or injuries visible in the photographs showing that sexual conduct had occurred. Had the photographs contained such evidence, they would have probative value.[12] However, the fact that the pictures were taken by a camera found in the hotel room indicates that Michelle was naked on the evening in question, and that sexual conduct could have occurred.
 {¶ 38} In addition, Hall was charged with sexual battery, which requires that the offender know that the victim is "substantially impaired." The photographs could show the victim's level of impairment due to her apparent inability to prevent Hall from taking the pictures. Or, if Hall's version of the events is believed, they could show that the victim was consenting to the events of the evening.
 {¶ 39} The prejudice to Hall by the admission of the photographs, themselves, was minimal. He was on trial for rape. His defense was that the two had consensual sexual intercourse. The admission of the photographs had minimal prejudice, if any, in regards to Hall. The greatest likelihood for prejudice to Hall would be the mere fact that he took the pictures. However, this evidence was admissible at the trial court's discretion, due to its probative value.
 {¶ 40} Both the probative value of the photographs and the prejudice conveyed to Hall by their admission were relatively minimal. Accordingly, the probative value of the photographs was not substantially outweighed by the danger of prejudice, as required by Evid.R. 403(A).
 {¶ 41} Moreover, Hall's trial counsel only objected to the admission of these exhibits on the ground that the chain of custody was not properly established. There was no objection that the content of the pictures was prejudicial to Hall. Therefore, a reversal on the ground that the photographs were inadmissible under Evid.R. 403 could only occur if there was plain error.[13] Plain error does not exist unless the results of the trial would have clearly been different.[14] Based on the minimal probative value and prejudice to Hall, we cannot say the results of the trial would have clearly been different without the admission of these photographs. This is especially true due to the testimony of the victim and Marcella regarding the victim's intoxicated condition on the night in question.
 {¶ 42} Another factor that should have been considered by both the state and the trial court was the potential for additional scrutiny and embarrassment for the victim. Showing pictures of an alleged rape victim's genitals can only make the entire ordeal more traumatic for that person. Presumably, the content of the pictures could have been described by one of the state's witnesses. This would have accomplished the state's objectives of showing that pictures were taken, without the explicit pictures being viewed by the jury. In the alternative, a stipulation to the fact that the pictures were taken and to their content may have been appropriate, since Hall admitted taking the pictures.
 {¶ 43} The trial court did not abuse its discretion by admitting the photographs into evidence. Hall's third assignment of error is without merit.
 {¶ 44} Hall's fourth assignment of error is:
 {¶ 45} "After reviewing the presented evidence at trial and evaluating the appellant's arguments on appeal, it is clear that Garry Hall's original conviction went against the sufficiency and manifest weight of the presented evidence."
 {¶ 46} We have found merit in Hall's first assignment of error. Therefore, Hall's manifest weight argument is moot. However, Hall's sufficiency argument is not moot. Should we find merit in Hall's sufficiency argument, the state would be barred from retrying Hall on double jeopardy grounds.[15]
 {¶ 47} When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[16]
 {¶ 48} The essential elements of sexual battery are that (1) sexual conduct occurred, (2) when the offender knew that the victim was substantially impaired.[17] The victim testified that she had sexual intercourse with Hall. In addition, Patrolman Petro of the Streetsboro Police Department testified that Hall admitted in his police report that the two had sexual intercourse. Finally, in court, Hall also testified that he had sexual intercourse with the victim. Thus, there was sufficient evidence presented to show that Hall engaged in sexual conduct with the victim.
 {¶ 49} The victim testified that she was in a "dream-like state" and could not move or talk when Hall had sexual intercourse with her. Marcella testified that the victim was very sick at the bar and had trouble functioning. This evidence, when viewed in a light most favorable to the prosecution, was sufficient to establish that Hall knew that the victim was substantially impaired when he had sexual contact with her.
 {¶ 50} Hall's fourth assignment of error relating to the sufficiency of the evidence is without merit. Having found merit to Hall's first assignment of error, this assignment of error relating to the manifest weight of the evidence is moot.
 {¶ 51} The judgment of the trial court is reversed. This matter is remanded for a new trial on the sexual battery charge.
[1] (Citations omitted.) State v. Unger (1981), 67 Ohio St.2d 65,67.
[2] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[3] State v. Unger, 67 Ohio St.2d at 67.
[4] State v. O'Brien (1987), 30 Ohio St.3d 122, 126.
[5] Id.
[6] State v. Zeh (1987), 31 Ohio St.3d 99, 103.
[7] Id.
[8] In re Sechler (Aug. 29, 1997), 11th Dist. No. 96-T-5575, 1997 Ohio App. LEXIS 3886.
[9] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.
[10] State v. Mason (1998), 82 Ohio St.3d 144, 158, citing State v.Maurer (1984), 15 Ohio St.3d 239, 264.
[11] See 2907.02 and 2907.03.
[12] See State v. Dumas (Feb. 18, 1999), 10th Dist. No. 98AP-581, 1999 Ohio App. LEXIS 515, at *17.
[13] State v. Smith (1997), 80 Ohio St.3d 89, 107.
[14] State v. Dennis (1997), 79 Ohio St.3d 421, 434, quoting State v.Wogenstahl (1996), 75 Ohio St.3d 344, 357.
[15] State v. Freeman (2000), 138 Ohio App.3d 408, 424, citing Statev. Thompkins (1997), 78 Ohio St.3d 380, 387.
[16] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[17] See R.C. 2907.03(A)(2).
DONALD R. FORD, P.J., concurs with concurring opinion.
JUDITH A. CHRISTLEY, J., dissents with dissenting opinion.