OPINION
{¶ 1} Appellant appeals his August 4, 2005, conviction and sentence entered in the Fairfield County Court of Common Pleas.
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} Calla Smith was born April 24, 1994. (R.p. 72).
 {¶ 4} In March 2003, Calla's mother, Lori South, received a telephone call from her stepmother who asked Lori to get her son and come to her house right away. (T. at 168-169). After Lori arrived, Calla's grandmother, Joyce Smith, came over and was very upset, in tears. (T. at 170). Mrs. Smith sat down at the table and told Mrs. South that Lori's daughter Calla told her that Lori's husband (Appellant herein) had done sexual things to her. (T. at 170). They decided to take Calla immediately to the hospital. (T. at 170) When Lori returned from the hospital, she spoke to Appellant who responded by saying "they're putting her up to this." (T. at 175).
 {¶ 5} At the Children's Hospital located in Columbus, Calla initially met with a social worker Janet Stonerook. (T. at 358). Calla told Ms. Stonerook that Appellant had touched her genitalia when they were undressed and had her rub up and down on his penis until he ejaculated. (T. at 370). According to Ms. Stonerook, Calla demonstrated a stroking motion and told her that Appellant showed her how to do this. (T. at 371).
 {¶ 6} On March 30th, Calla told her grandmother, Joyce Smith, that Appellant rubbed his penis between her legs, used his hands to "mess" with her crotch, sucked on her breasts, and that she had masturbated Appellant. (T. at 277). Mrs. Smith stated at trial that she had noticed many changes in Calla's behavior. (T. at 278-279). While the case was pending, Mrs. Smith noticed that Calla did not want to sleep in her own bedroom because it was in the front of the house, wanted to sleep with her mother, had trouble sleeping, did not want to wait for the bus alone, and acted afraid whenever Appellant was nearby. (T. at 343).
 {¶ 7} When asked by the prosecutor why she was in court, Calla stated: "Because David Edward South did sexual things to me, which is against the law." (T. at 79). Calla said the sexual things occurred first at a hotel in Dayton, and then in the living room of her home and the bedroom. (T. at 79). These acts occurred when she was in the third grade. Id. Calla testified that, while in the hotel room, Appellant touched her vagina with his penis, lips, and tongue. (T. at 90). Calla told the jury that Appellant went under the covers in the hotel room and licked the vagina. (T. at 90). Calla further testified that when her mom returned to the hotel, Appellant told Calla to hurry and put her underwear on fast. (T. at 92). Calla also testified that Appellant touched her vagina with his fingers. (T. at 93). Calla stated that she thought it tickled. Id.
 {¶ 8} Calla also testified that on another day, in the living room at the family home located in Fairfield County, when she was still in the third grade, Appellant rubbed his finger on the outside of her vagina. (T. at 96). She said that Appellant then carried her into her bedroom. (T. at 98). While both parties were undressed, Appellant sucked on her chest, while she was up against the headboard. (T. at 101). Appellant also put his finger inside her vagina and started rubbing. (T. at 103). Appellant also rubbed his penis on her butt and her vagina. (T. at 105).
 {¶ 9} Calla testified that Appellant showed her how he wanted her to touch his penis with her hands. (T. at 107). Calla identified a picture of Appellant's penis that she had drawn when she was discussing the case with Detective Pierce. (T. at 107-108). Calla stated that while she was rubbing Appellant's penis, whitish-yellowish stuff came out. (T. at 110). Appellant also persuaded Calla to place his penis in her mouth by telling her that her mother does that also. (T. at 111).
 {¶ 10} Calla testified that Appellant told her that sexual things happened to him when he was a kid and that he did it with two other children and that Calla was sexier than her mom. (T. at 113). Appellant threatened Calla and told her that she would be in really big trouble if she told anyone. (T. at 113-114.). Despite such threats, Calla finally disclosed the sexual abuse to her grandmother, Joyce Smith. (T. at 114).
 {¶ 11} Appellant was indicted December 19, 2003 by the Grand Jury of the Fairfield County Common Pleas Court in an indictment which alleged five counts, two counts of Rape as felonies of the first degree with mandatory life imprisonment, and three counts of Gross Sexual Imposition as felonies of the third degree. Count One alleged the offense of Rape on some date between January 1, 2003 and March 30, 2003, and alleged the enhancement factor that the act was committed by force or threat of force. Count Two alleged the same offense, within the same time period, but did not include the element of force or threat of force. Counts Three and Four alleged the offense of Gross Sexual Imposition during the same time period, but alleged that the time of the offense was different than one another, or Counts One and Two. Count Five of the indictment alleged the offense of Gross Sexual Imposition on some date between December 15, 2003 and January 15, 2005.
 {¶ 12} On April 9, 2004, the State filed an amended indictment which included the same five offenses, but with certain amendments. Count One was amended to change the section number of the offense from § 2907.02(A)(2) to § 2907.02(A)(k) of the Ohio Revised Code. Count two was amended to change the section of the offense from § 2907.02(A)(1)(d) to § 2907.02(A)(1) of the Ohio Revised Code. Count Two was also amended to delete the enhancement factor for a mandatory life sentence. Count Five was amended to change the date of the offense from a date between December 5, 2002 through December 15, 2003, to a date between December 4, 2002 and December 26, 2002.
 {¶ 13} At the defendant's request, a Bill of Particulars was filed February 2, 2004. An Amended Bill of Particulars was filed March 1, 2004. A Second Amended Bill of Particulars was filed March 25, 2004.
 {¶ 14} On July 19, 2004 the defendant filed a motion regarding the disclosure of the State to call the victim's counselor to testify that the victim suffered from Post Traumatic Stress Disorder. The defendant motioned the court for an order prohibiting the testimony of the state's witness, or in the alternative to allow the defendant the opportunity to conduct an independent evaluation of the victim or access to the records of the counselor who would be testifying on behalf of the state. That motion was denied by Entry dated December 2, 2004, which also resolved all other motions which were then pending before the court. In the same Entry the court scheduled the jury trial to begin on January 25, 2005.
 {¶ 15} On January 18, 2005 the state filed three Motions in Limine, including a motion requesting that the defendant be precluded from introducing any "evidence relating to the alleged sexual history of the victim", or "discussing any allegation of sexual or physical abuse committed by the victim's relatives that have not resulted in felony conviction". The defendant filed a Memorandum Contra to the state's motion on January 24, 2005. Prior to opening arguments the trial court granted the State's Motion in Limine on this issue.
 {¶ 16} The jury trial was held from January 25, 2005 through February 2, 2005. The jury returned verdicts on February 3, 2005 of guilty on all five counts.
 {¶ 17} On February 23, 2005, after an extension from the trial court, the defendant filed a Motion for a New Trial. After an oral hearing, the defendant's Motion for a New Trial was denied by Entry dated May 27, 2005. The sentencing hearing was held July 18, 2005. The Judgment Entry of Sentencing was filed August 4, 2005. The defendant was ordered to serve nine years as to count one, a life sentence as to count two, and three years each as to counts three, four and five. Each sentence was ordered to be served consecutive to, the others.
 {¶ 18} It is from this conviction and sentence Appellant now appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 19} "I. THE TRIAL COURT ERRED IN PROHIBITING THE DEFENDANT FROM OFFERING EVIDENCE OF A THIRD PARTY'S GUILT.
 {¶ 20} "II. THE TRIAL COURT ERRED BY DENYING THE DEFENDANT THE OPPORTUNITY TO EXAMINE THE NOTES OF THE COUNSELOR WHO TESTIFIED THAT THE VICTIM SUFFERED FROM POST TRAUMATIC STRESS DISORDER, TO HAVE THE CHILD EXAMINED BY AN INDEPENDENT EXPERT, OR TO APPOINT AN EXPERT TO ASSIST IN THE CROSS EXAMINATION OF THE COUNSELOR CALLED BY THE STATE.
 {¶ 21} "III. THE TRIAL COURT ERRED IN NOT ALLOWING DEFENSE COUNSEL TO EXAMINE A JUROR WHO RECANTED HER VERDICT.
 {¶ 22} "IV. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 23} "V. THE TRIAL COURT ERRED IN IMPOSING A LIFE SENTENCE FOR A FELONY OF THE FIRST DEGREE WHERE THE ENHANCEMENT FACTOR ALLEGED IN THE INDICTMENT WAS NOT FOUND BY THE JURY."
 I. {¶ 24} In his first assignment of error, Appellant argues that the trial court erred in not allowing Appellant to present evidence of a third party's alleged guilt. We disagree.
 {¶ 25} Appellant argues that he should have been allowed to present evidence that the victim in this case might have been abused by her paternal grandmother. The trial court disallowed such evidence based on Evid. R. 403 and R.C. § 2907.02(D), Ohio's Rape Shield law, which provide as follows:
 {¶ 26} Evid.R. 403 Exclusion of relevant evidence on groundsof prejudice, confusion, or undue delay
 {¶ 27} "(A) Exclusion mandatory
 {¶ 28} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 29} "(B) Exclusion discretionary
 {¶ 30} "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 31} R.C. § 2907.02 Rape; evidence; marriage or cohabitationnot defenses to rape charges
 {¶ 32} "(D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
 {¶ 33} "Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 34} Evidence Rule 403 vests a trial court with discretion to determine whether the probative value of proffered evidence is substantially outweighed by the danger that it is prejudicial. See State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144. We, as a reviewing court, will not interfere with the trial court's balancing of probativeness and prejudice unless the trial court has clearly abused its discretion and materially prejudiced appellant. State v. Slagle, 65 Ohio St.3d 597, 601,605 N.E.2d 916 (citing State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126). We note the term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; State v.Moreland (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.
 {¶ 35} Upon review, we find that the trial court did not abuse its discretion in not allowing in such evidence. The record does not reflect that the victim in this case has ever alleged that she was abused by anyone other than the Appellant. Any possible probative value of the testimony by other victims against persons other than Appellant would have been substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 36} Based on the foregoing, we find Appellant's first assignment of error not well-taken and overrule same.
 II. {¶ 37} In his second assignment of error, Appellant argues that the trial court erred in denying him the opportunity to examine the notes of the counselor who testified regarding the victim suffering from post-traumatic stress disorder, to allow Appellant to have the child examined by an independent expert or to appoint an expert in this matter to help with cross-examination. We disagree.
 {¶ 38} The trial court, in its denial of Appellant's Motion for a New Trial, wherein Appellant made the same argument, stated:
 {¶ 39} "The psychological records of the victim were not necessary for a meaningful cross-examination of Mr. Ford. If any of the victim's prior statements, or any other witness statements or depositions for that matter, were inconsistent with Mr. Ford's testimony or conclusions then Defendant was free to cross-examine Mr. Ford on that basis. Further, Defendant was free to cross-examine Mr. Ford regarding his interactions with the victim, his reasons for concluding the victim had Post Traumatic Stress Disorder, or on any other relevant matter. The victim's psychological records were not used by Mr. Ford while testifying, were not offered into evidence by the State and were not exculpatory of the Defendant and material to either guilt or punishment. Therefore, these records were not discoverable and not necessary for a meaningful cross-examination of this witness.
 {¶ 40} "In addition to already possessing more than enough information with which to cross-examine Mr. Ford without the psychological records of the victim, Defendant's motion for access to the victim's psychological records was properly denied on procedural grounds. Defendant's motion specifically requested "[t]hat the defendant be granted access to the psychological records of the complaining witness." The Defendant's Memorandum in Support simply states that ". . . due process and the Ohio Rules of Evidence permit the defendant to review the notes of any testifying expert in order to conduct a meaningful cross-examination of the expert's opinion," and ". . . [t]he defense also requests the court court [sic] order the State to provide the defense copies of the mental health records of the alleged victim." The above quotations consist of Defendant's entire argument regarding his request for access to the victim's psychological records. Defendant did not cite to any specific case, statute, or other legal authority to support that request. The Ohio Criminal Rules of Procedure specifically require that motions "shall state with particularity the grounds upon which it is made . . . [and] shall be supported by a memorandum containing citations of authority. . . ." Crim.R. 47. Based on Defendant's complete lack of legal support for his argument requesting access to all of the victim's psychological records this Court properly concluded that "[o]ther than general argument, the Defendant did not support this [request for the psychological records of the victim] with any authority for the proposition asserted." Therefore, this Court properly overruled Defendant's motion for failure to support his motion with any authority as required by the Crim.R. 47."
 {¶ 41} The trial court went on to find:
 {¶ 42} ". . . there is no indication that an additional evaluation would result in any inconsistencies with Mr. Ford's conclusions. Additionally, requiring an independent psychological evaluation of the victim is not mandated by any Ohio statute or case law. Ohio appellate courts have consistently determined that requiring crime victims to undergo forced psychological evaluations should not be required lightly. See generally Statev. Murrell (1991) 72 Ohio App. 3d 668. In overruling Defendant's Motion Relating to the Psychological History of the Complaining witness this Court noted that "[o]ther than general argument, the Defendant did not support this branch of his Motion [requesting an independent psychological exam of the victim] with any authority for the proposition asserted. Defendant's Motion and Memorandum do not provide any compelling need for such an examination." The Supreme Court of Ohio requires independent psychological evaluations of victims when the mental condition of the victim was a "contested, essential element of the crime charged." See State v. Zeh (1987) 31 Ohio St.3d 99. In Zeh,
the defendant was indicted under R.C. 2907.03(A)(2), which states "[t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." Therefore, the mental condition of the victim was a contested, essential element of the crime charged in that case. In the present case, however, Defendant was indicted for rape and gross sexual imposition. None of the elements of these crimes involves a mental condition of the victim and therefore an independent psychological evaluation of the victim is not required."
 {¶ 43} Upon review, we find no error in the trial court's denial of Appellant's request to review such records. Appellant failed to articulate how he was prejudiced by such denial, he had the opportunity to cross-examine such witness and such records were not offered into evidence.
 {¶ 44} Based on the foregoing, we find Appellant's second assignment of error not well-taken and overrule same.
 III. {¶ 45} In his third assignment of error, Appellant argues that the trial court erred in not allowing his counsel to examine a juror who recanted her verdict.
 {¶ 46} Appellant's counsel, in support of Appellant's motion for a new trial, stated that "[w]ithin a week of the jury verdict [he] was contacted by a co-worker of one of the juror who claimed that the juror had recanted her verdict." According to Appellant's counsel, he contacted the juror and she recanted her verdict to such counsel and a private investigator.
 {¶ 47} Juror testimony is generally not admissible to impeach a jury verdict unless there is supporting evidence aliunde. Evid.R. 606(B); State v. Hessler (2000), 90 Ohio St.3d 108,123, 734 N.E.2d 1237. Evidence aliunde is extraneous, independent evidence of alleged conduct based on the firsthand knowledge of one who is not a juror. State v. Schiebel (1990),55 Ohio St.3d 71, 75, 564 N.E.2d 54.
 {¶ 48} Evid. R. 606(B) provides in pertinent part:
 {¶ 49} "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented."
 {¶ 50} Here the affidavits that accompanied the motion for a new trial were those of the defense attorney and the private investigator, who recited hearsay allegations of which neither had any personal knowledge. We find appellant's motion made pursuant to Ohio Evid. R. 606 was insufficient, and accordingly, the trial court did not err in overruling appellant's motion for new trial.
 {¶ 51} Appellant's third assignment of error is overruled.
 IV. {¶ 52} In his fourth assignment of error, Appellant argues that the jury verdict was against the manifest weight of the evidence. We disagree.
 {¶ 53} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See also, State v. Thompkins, 78 Ohio St.3d 380,678 N.E.2d 541, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175,485 N.E.2d 717.
 {¶ 54} Appellant was convicted of rape in violation of R.C. §2907.02(A)(2) and R.C. § 2907.02(A)(1)(b) and gross sexual imposition in violation of R.C. § 2907.05(A)(4):
 {¶ 55} R.C. § 2907.02 Rape
 {¶ 56} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 57} "(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.
 {¶ 58} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 {¶ 59} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.
 {¶ 60} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 {¶ 61} "* * *"
 {¶ 62} R.C. § 2907.05 Gross Sexual Imposition
 {¶ 63} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 64} * * *
 {¶ 65} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 66} Upon review of the record, the child victim testified at trial as to the repeated sexual encounters with appellant, and the evidence demonstrated the child was under the age of thirteen at the time. The child's mother also testified relative to her daughter telling her about the incidents of abuse. Further, the State presented the testimony of Detective Pierce of the Fairfield Police Department relative to his investigation of the allegations, and the victim's description of the incidents. Additionally, the jury also heard testimony from Janet Stonebrook, the social worker who interviewed the victim and Stephen Ford, a licensed clinical counselor.
 {¶ 67} The jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Accordingly, we find there was sufficient, competent evidence to support appellant's conviction, and the same was not against the manifest weight or sufficiency of the evidence
 {¶ 68} Based on the foregoing, we find Appellant's fourth assignment of error not well-taken and overrule same.
 V. {¶ 69} In his fifth and final assignment of error, Appellant argues that the trial court erred in imposing a life sentence where the enhancement factors were not found by a jury. We disagree.
 {¶ 70} Specifically, Appellant argues that Count Two, as amended, did not contain a life imprisonment element and that the code section in such amended count was changed from R.C. §2907.02(A)(1)(b) to R.C. § 2907.02(A)(1). Appellant presented this argument in his motion for a new trial.
 {¶ 71} Upon review of the record, we find that the original indictment in this matter read as follows:
 {¶ 72} "COUNT ONE — Rape (Life Imprisonment)
 {¶ 73} "On a date certain between January 1, 2003 through March 30, 2003, at the County of Fairfield aforesaid, DAVID E. SOUTH, unlawfully, did engage in sexual conduct with C.S., not his spouse, by force or threat of force, the said C.S. being less than thirteen (13) years of age, to-wit: 8 years old and Date of Birth being 04/24/1994, in violation of Section 2907.02(A)(2) of the Ohio Revised Code.
 {¶ 74} "COUNT TWO — Rape (Life Imprisonment).
 {¶ 75} "And the Jurors of the Grand Jury aforesaid, on their oaths aforesaid, do further present and find, that the said DAVID E. SOUTH, on a date certain between January 1, 2003 through March 30, 2003, at the County of Fairfield, aforesaid, unlawfully, did engage in sexual conduct with C.S., not his spouse, the said C:S. being less than thirteen (13) years of age, to-wit: 8 years old and Date of Birth being 04/24/1994, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code."
 {¶ 76} The State amended the indictment as follows:
 {¶ 77} "COUNT ONE — Rape (Life Imprisonment)
 {¶ 78} "On a date certain between January 1, 2003, through March 30, 2003, at the County of Fairfield, aforesaid DAVID E.SOUTH, unlawfully, did engage in sexual conduct with C.S., not his spouse, by force or threat of force, the said C.S. being less than thirteen (13) years of age, to-wit: 8 years old and Date of Birth being 04/24/1994, in violation of § 2907.02(A)(k) of the Ohio Revised Code.
 {¶ 79} "COUNT TWO — Rape, FI
 {¶ 80} "And the Jurors of the Grand Jury aforesaid, on their oaths aforesaid, do further present and find, that the saidDAVID E. SOUTH, on a certain between January 1, 2003, through March 30, 2003, at the County of Fairfield, aforesaid unlawfully, did engage in sexual conduct with C.S., not his spouse, the said C.S. being less than thirteen (13) years of age, to-wit: 8 years old and Date of Birth being 04/24/1994, in violation of §2907.02(A)(1) of the Ohio Revised Code."
 {¶ 81} The trial court, in its written decision denying Appellant's motion for a new trial held:
 {¶ 82} "The State indicted Defendant for two counts of rape, both with a life imprisonment specification and subsequently amended the Indictment in an attempt to reflect that only one of the rape counts should contain a life specification. However, the State mistakenly requested the incorrect count to be changed to contain the life imprisonment specification. The jury found Defendant guilty of Rape pursuant to R.C. 2907.02(A)(2) as to Count One and guilty of Rape pursuant to R.C. 2907.02(A)(1)(b) in Count Two, making a further finding that the victim was less than ten years of age at the time of the offense.
 {¶ 83} "When a defendant claims a sentence to be imposed is inappropriate because of alleged errors in the indictment, the defendant has to demonstrate that "he was prejudiced in the defense of his case from this substantial error or that he would have proceeded differently had this error been corrected." SeeState v. Biros (1997), 78 Ohio St.3d 426. In Biros, the Supreme Court of Ohio determined the defendant was eligible for the death penalty even though there was a technical error in the aggravating circumstance portion of the indictment. Id. At 437. Because it was easily ascertainable what section the indictment was trying to reference and the "indictment informed [the defendant] of all elements comprising the capital offense of aggravated murder" the sentence was upheld. Id. Further, the Supreme Court of Ohio held that pursuant to Crim. R. 12(C) "defenses and objections based on defects in the indictment' must be raised before trial" and failure to do so `shall constitute waiver,' although the court may grant relief from the waiver." See State v. Foust (2004), 105 Ohio St.3d 137, 2004 Ohio 7006. See, also, State v. Williams (1977), 51 Ohio St.2d 112; Statev. Carter (2000), 89 Ohio St.3d 593.
 {¶ 84} "The Court begins by noting that Defendant failed to bring to the attention of this Court any deficiencies in the Indictment before the conclusion of the trial. Further all of the elements of the crime of rape were included in the Indictment, the jury was properly instructed and the evidence at trial demonstrated that the victim was less than ten years of age at the time of the incidents alleged in the Indictment. In addition, it was "easily ascertainable" which Count of the indictment the State intended to amend.
 {¶ 85} "The evidence of the victim's age was uncontested at trial; the alleged age of the victim at the time of the offenses alleged in the Indictment was stated as "8 years old and Date of Birth being 04/24/1994." Therefore, R.C. 2907.02(B), based on a conviction of R.C. 2907.02(A)(1)(b), requires a life imprisonment sentence. Defendant had notice of the victim's age, the jury was instructed regarding the victim's age and determined the victim was less than 10 years old when the crime was committed.
 {¶ 86} "The Indictment and Amended Indictment both indicated Defendant could face life imprisonment if found guilty as charged. The fact that this delineation was mistakenly placed on the wrong count does not change the facts that Defendant knew he was being charged under R.C. 2907.02(A)(1)(b) and that the victim was under 10 years old at the time of the offense. Defendant never contested the victim's age at trial nor did he raise an objection concerning this matter prior to the filing of his Motion for New Trial. The Supreme Court of Ohio has determined that waiting until after trial to object to an indictment constitutes waiver. Foust supra.
 {¶ 87} "Based on the foregoing, this Court finds that the jury finding for life imprisonment sentence was consistent with the indictment and that Defendant was not prejudiced. Thus, Defendant's fifth claim that a new trial should be granted must fail." (Judgment Entry 5/27/05).
 {¶ 88} Upon review of the record in this matter, we find that the verdict form as to Count Two reads:
 {¶ 89} "We, the jury, find that the defendant is guilty of Rape in violation of R.C. 2907.02(A)(1)(b) as set forth in Count Two of the Indictment.
 {¶ 90} "If your verdict is guilty, you must still separately decide beyond a reasonable doubt whether C.S. was less than ten years of age at the time of the offense.
 {¶ 91} "Was C.S. less than ten years of age at the time?
 {¶ 92} "YES NO"
 {¶ 93} "Each of us has signed his/her name this 2nd day of February, 2005."
 {¶ 94} Said verdict was signed by all twelve jurors.
 {¶ 95} Based on such verdict form which contains the necessary findings, Appellant's failure to object to the indictment as amended being defective or deficient, and the fact that Appellant was not prejudiced by such error in that he knew he was charged with a crime which required a life imprisonment sentence, we find that the trial court did not err in imposing a life sentence on Count Two. Appellant was not given a life sentence on Count One, which is the count which mistakenly contained the (Life Imprisonment) enhancement.
 {¶ 96} Based on the foregoing, we find Appellant's fifth assignment of error not well-taken and overrule same.
 {¶ 97} The decision of the Fairfield County Court of Common Pleas is affirmed.
Boggins, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Fairfield County, Ohio, is affirmed. Costs assessed to Appellant.