[Cite as *State v. Smith*, 2011-Ohio-3943.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25305 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GENO R. SMITH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 08 2584 |

DECISION AND JOURNAL ENTRY

Dated: August 10, 2011

CARR, Judge.

{¶1}   Appellant, Geno Smith, appeals his conviction out of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}   This case stems from an incident that occurred on July 5, 2009, that led to the arrest of Smith. Smith was indicted by the Summit County Grand Jury on one count of sexual battery in violation of R.C. 2907.03(A)(2), a felony of the third degree. Smith pleaded not guilty to the charge.

{¶3}   The matter proceeded to trial before the jury in February 2010. At the conclusion of the State's evidence, Smith made an oral motion for acquittal. The trial court denied the motion. Smith did not put on a defense. Smith renewed his motion. The trial court denied the motion again. The jury returned a verdict of guilty on the charge of sexual battery. The trial court sentenced Smith to five years in prison, a mandatory period of five years of post-release

control, and ordered him to register as a TIER III sex offender. Smith filed a notice of appeal.

He raises three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

"THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF SEXUAL BATTERY, PURSUANT TO O.R.C. §2907.03(A)(2) AS INDICATED, AND AS A RESULT THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED AND THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR ACQUITTAL AFTER THE CLOSE OF THE STATE'S CASE AND/OR AFTER THE CLOSE OF EVIDENCE."

**{¶4}** Smith argues that his conviction for sexual battery was not supported by sufficient evidence. This Court disagrees.

**{¶5}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

**{¶6}** Smith was charged with one count of sexual battery in violation of R.C. 2907.03(A)(2), which states, in relevant part:

"No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."

**{¶7}** R.C. 2901.22(B) states:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

**{¶8}** R.C. 2907.01(A) defines "sexual conduct" as:

"vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."

**{¶9}** Since "substantially impaired" is not defined in the Ohio Criminal Code, the Ohio Supreme Court has held that "it is sufficient for the state to establish substantial impairment by offering evidence at trial establishing a reduction or decrease in the victim's ability to act or think." *State v. Doss*, 8th Dist. No. 88443, 2008-Ohio-449, at ¶13, citing *State v. Zeh* (1987), 31 Ohio St.3d 99, 103-04.

**{¶10}** Smith argues that there was insufficient evidence to establish that the victim was substantially impaired and that even if the State proved she was substantially impaired, there was insufficient evidence to prove that Smith knew she was substantially impaired. Because he limits his argument to this element, we will focus our discussion there.

**{¶11}** On July 4, 2009, an all-day get-together was held at Ms. Shatoya Fleming's house. Guests included Ashley Clark, Lynette Fleming, Laniece Bitting, Smith (also known as "Nardi"), and the victim. Smith was dating Shatoya at the time. The victim was friends with Shatoya and the other witnesses. At the date of the incident, the victim was seventeen years old and Smith was in his late twenties.

**{¶12}** Most people at the party were drinking. The victim arrived at Shatoya's in the early afternoon and started taking shots of liquor. She left the party a couple hours later with her

dad for a family party, but returned around 5:00 p.m. or 6:00 p.m. She then started drinking a lot of liquor, including drinking straight out of the bottle. Multiple witnesses testified that they witnessed the victim drinking liquor heavily throughout the day. Smith also admitted to an investigating officer that he thought the victim had been drinking.

{¶13} The victim left to go see fireworks at an apartment complex a block away around 9:00 p.m. or 10:00 p.m. The victim testified she was intoxicated at this time and was staggering and dizzy. After the fireworks, she returned to Shatoya's for a little bit, but then left again and returned to the apartment complex, where she continued drinking vodka. The victim then called a friend to take her to a gas station for food around midnight before returning to Shatoya's. When questioned how intoxicated she was at this point, the victim responded, "Very, to where I'm just ready to go to sleep." Rather than sleep at Laniece's as she originally planned, the victim decided to sleep at Shatoya's because she was "too drunk to even do anything or call another ride."

{¶14} Witnesses, who were outside at the time, observed the victim stumbling when she returned to Shatoya's house at the end of the night. Smith was also outside at this time. The victim went inside the house and passed out on an L-shaped couch in the living room. Lynette slept on the other half of the couch with her feet touching the victim's feet. Ashley slept on the loveseat a few feet away from the couch and a group of children slept on the floor. Smith and Shatoya went upstairs to bed around 3:00 a.m.

{¶15} Around 4:00 a.m., Smith came downstairs. Lynette testified that the victim was sleeping when Smith came downstairs and sat on the couch. Both Ashley and Lynette, who were awakened, testified that they saw Smith touching the victim. Lynette testified that Smith was grinding on the victim and it appeared they were having sex. Ashley also stated that she thought

she saw Smith put his penis inside the victim's private area. At one point, the victim was laying on Lynette with Smith in front of her. The victim never said anything to Lynette when this occurred and Lynette told the victim to get off. Ashley testified that Smith would stop the sexual acts whenever someone woke up, but then continue after the person went back to sleep. After the sexual act was over, Smith went back upstairs. Both Ashley and Lynette testified that they never heard the victim say anything to Smith during the incident. The victim woke up at 5:00 a.m. and went to the bathroom. The victim testified that she staggered up the stairs to the bathroom and was still drunk.

{¶16} Laniece picked the victim up from Shatoya's house later that morning. She testified that the victim appeared scared and nervous. She added that the victim "wasn't acting like herself" and was shaking. She testified that the victim told her "it felt like she was having sex" but that she did not remember having sex.

{¶17} The victim started to feel vaginal pain at Laniece's. She called Lynette and learned that a sexual act had occurred. The victim then called Shatoya and asked her to ask Smith about the sexual act. Smith then called the victim. The victim asked Smith if they had sex and he replied "maybe." The victim went back to Shatoya's where she confronted Smith and again asked if they had sex. The victim testified that Smith laughed and still said "maybe." She stated that everyone was laughing, because they thought it was a joke. After everyone was done laughing, Smith said, "I guess we did." The victim testified that she had no recollection of having sex nor did she consent to any kind of sexual conduct with Smith.

{¶18} The victim went home and told her mother what happened. The victim's mother then took her to the ER at Akron Children's Hospital. Ms. Kimberly Bach conducted a sex

abuse interview and then had a rape kit performed at the hospital. Ms. Bach testified that it was not surprising that the victim did not remember having sex because of her intoxication.

{¶19} A few days later, the victim met with Detective Guy Sheffield of the Akron Police Department. The victim and Detective Sheffield conducted a one party consent call to see if Smith would admit to what he had done, but Smith told the victim they did not have sex. Detective Sheffield then met with Smith. Smith told Detective Sheffield that he and the victim had sex after everyone went to bed and that "she put herself on me." He admitted he thought the victim had been drinking. He stated that he and the victim had stayed up talking. He also stated he could not think of any reason why Ashley or Lynette would have a problem with him or would make up a story about him.

{¶20} The victim testified that she spent the night at Shatoya's a lot, including nights when Smith also spent the night. She testified that she drank at Shatoya's many times and that Smith had seen her intoxicated before. She testified that one night in early summer when she was drunk and sleeping at Shatoya's, she woke up to Smith kissing her neck and she told him to move. She stated that despite this incident, she thought she would be safe at Shatoya's since she had spent the night so many times before.

{¶21} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charge of sexual battery were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus. Smith admitted to having sex with the victim, who was not his spouse. Smith also admitted he thought the victim had been drinking. Multiple eyewitnesses confirmed his belief as they testified that they saw the victim drinking heavily throughout the day and night. The victim testified that she had "[o]ver 15 or 20 shots" of liquor that day and was very intoxicated. Smith

was outside when the victim came stumbling up to the house at the end of the night. Additionally, the State presented the eyewitness testimony of people who were near the victim during the sexual act and never heard the victim say or do anything during the act, further suggesting the victim was substantially impaired.

{¶22} Based on the foregoing, the State presented sufficient evidence to establish that the victim was substantially impaired and that Smith knew she was substantially impaired when he engaged in sexual conduct with her. Smith's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

"THE COURT'S VERDICT IN THIS CASE FINDING GENO SMITH GUILTY OF SEXUAL ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AS A RESULT, APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

{¶23} In his second assignment of error, Smith argues his conviction is against the manifest weight of the evidence. We do not agree.

{¶24} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio.St.3d 380, 390 (Cook J., concurring). A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

"Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶25} Smith again focuses his argument on the substantially impaired element. He argues that there is no evidence that he knew the victim was substantially impaired and attempts to cast doubt on other witnesses' credibility.

{¶26} The defendant admitted that he thought the victim had been drinking. The victim testified that she was drinking heavily at the party at Shatoya's. Several witnesses saw the victim drinking a great amount of liquor at the party. By the end of the night, the victim was stumbling and could not even call someone for a ride to Laniece's house. The victim testified that she passed out on the couch and did not wake up until she had to use the bathroom at 5:00 a.m. The victim testified that she had no recollection of ever having sex that night.

{¶27} Smith tries to cast doubt on Lynette and Ashley's credibility by arguing that they were not awake for the entire sexual act. However, they testified consistently with one another. They testified that they had witnessed the victim drinking heavily throughout the day and pass out on the couch. They were lying within close proximity to the victim when the sexual act

occurred. Both witnesses testified that the victim had been sleeping and did not speak during the act. Furthermore, whether the witness was awake for the entire incident is just one factor a jury can weigh when making a determination of the witness' credibility. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 231.

{¶28} At the same time, Smith's denials about having sex with the victim cast doubt on his own credibility. When initially confronted by the victim at Shatoya's house, Smith would not outwardly admit that they had sex. During the one party consent call, Smith told the victim that they did not have sex. The victim lied to Smith saying she was pregnant and asked if he wanted a DNA test and he said, "Why not?" The victim repeatedly asked Smith whether they had sex and he kept responding "I don't know" and "I don't think we did." At the end of the phone call, Smith told the victim, "I apologize if I touched you." Smith did not fully admit to having sex with the victim until he met with Detective Sheffield. At that meeting, Smith admitted that he thought the victim had been drinking alcohol and that he had sex with her.

{¶29} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22. A thorough review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Smith, and there is no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Smith of sexual battery.

{¶30} In his argument, Smith focused solely on whether the State proved he knew the victim was substantially impaired, and we conclude the State proved this element. The weight of the evidence supports the conclusion that the victim was substantially impaired and anyone observing her that evening, including Smith, would have realized this. See, e.g., *In re G.E.S.*, 9th

Dist. No. 23963, 2008-Ohio-2671, at ¶ 43. The victim drank an extensive amount of liquor throughout the day. Smith admitted he thought the victim had been drinking. Smith was outside when other witnesses observed the victim stumbling towards the house. The victim passed out on a couch at Shatoya's, because she was too drunk to call for a ride. Accordingly, the evidence establishes that the victim was substantially impaired, as she had a reduced ability to act and think, and Smith knew this.

{¶31} Furthermore, two eyewitnesses to the sexual act testified that the victim had been sleeping and that they did not hear either the victim or Smith speak during the sexual act. The victim stated that she was passed out, did not wake until 5:00 a.m., and had no memory of having sex. This evidence is contrary to Smith's assertion that the victim instigated the sexual conduct and that they had stayed up talking. Smith's credibility was further undermined given that he lied to the victim when he told her they did not have sex, but then admitted that he had sex with the victim when he met with a police detective. Accordingly, Smith's conviction for sexual battery is not against the manifest weight of the evidence. Smith's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

"THE COURT ABUSED ITS DISCRETION IN READING PORTIONS OF THE TRANSCRIPT TO THE JURY WHEN IT WAS APPARENT THAT THE INFORMATION SOUGHT WOULD PREJUDICE THE DEFENDANT AND RESULT IN HIS CONVICTION."

{¶32} After indicating they were having difficulty in reaching a unanimous verdict, the jury requested a portion of the transcript of the victim's testimony regarding a previous incident involving the victim waking up to Smith kissing her. The trial court read the specific portions of the transcript requested after concluding that it was necessary to do so "if there's any hope of this jury coming up with a verdict."

{¶33} Smith argues that the trial court abused its discretion in reading the requested portion of the transcript after the jurors had begun deliberations. Smith contends that he was prejudiced because the Court puts emphasis on the testimony just by reading it and the portions of the transcript that were read were taken out of context.

{¶34} "After jurors retire to deliberate, upon request from the jury, a court in the exercise of sound discretion may cause to be read all or part of the testimony of any witness, in the presence of or after reasonable notice to the parties or their counsel." *State v. Berry* (1971), 25 Ohio St.2d 255, 263. A trial court's decision to provide or read transcripts to the jury during deliberations has been accepted as properly within the court's discretion. *Id.* at 257; See also, *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶123; *State v. Carter* (1995), 72 Ohio St.3d 545, 560; *State v. Cox*, 12th Dist. No. CA2005-12-513, 2006-Ohio-6075, at ¶19.

{¶35} An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Id.*

{¶36} This Court finds that the trial court did not abuse its discretion in reading portions of the transcript to the jury. In *State v. Leonard*, the trial court read to the jury specific portions of two witnesses' testimony that they had requested. *Leonard* at ¶122. After holding that the trial court "has broad discretion in this regard[,]" the Supreme Court stated that the defendant only offered a "purely speculative claim of prejudice" rather than show that the trial court abused its discretion. *Id.* Likewise in this case, it was within the trial court's discretion to read portions

of the victim's testimony to the jury. Smith did not demonstrate how the reading of the testimony prejudiced him. Accordingly, the trial court did not abuse its discretion in choosing to read the testimony that the jury requested.

**{¶37}** Furthermore, the trial court did not place any undue emphasis on the testimony simply by reading it to the jury. Rather, the Court protected against this by instructing the jury, "You are to take this testimony and consider it in context with all the other testimony that you heard as a part of this trial and that you're not to give any special emphasis to this testimony because it is singled out and read to you specifically, okay." This limiting instruction cautioned the jury against placing emphasis on the testimony or taking it out of context.

**{¶38}** Smith also argues that the requested testimony should not have been read to the jurors as it "did not go to any of the necessary elements of the offense of sexual battery." However, there were no objections when this testimony was given at trial. Some of the testimony re-read was actually from defense's cross-examination of the victim. Therefore, any such objection was forfeited and we need not consider such argument on appeal.

**{¶39}** It was within the trial court's discretion to read the testimony of a witness upon request by the jury. The trial court advised both parties' counsel of the jury's request before deciding to read the testimony to the jury. The limiting instruction cautioned the jury against placing emphasis on the testimony. As such, the trial court's decision to read the specific portions of the transcript to the jury was not unreasonable, arbitrary, or unconscionable. Accordingly, Smith's third assignment of error is overruled.

## III.

**{¶40}** Smith's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.