THE STATE OF OHIO, APPELLANT, *v.* ZEH, APPELLEE.

[Cite as State *v.* Zeh (1987), 31 Ohio St. 3d 99.]

(No. 86-943—Decided June 24, 1987.)

100

*Arthur M. Ney, Jr.,* prosecuting attorney, and *Christian J. Schaefer,* for appellant.

*Allen Brown,* for appellee.

HOLMES, J. The narrow issue presented in this appeal is whether, in the interests of providing a fair trial in a criminal proceeding, a victim-witness must submit to a pre-trial, extra-judicial, psychological or psychiatric examination conducted at the request of the defendant when the results of such examination are reasonably necessary to contest expert testimony presented by the state, applicable to an essential element of the crime charged. Although we must answer such query in the negative, we do so conditionally.

The prosecutor argues that the trial court properly denied the motion to require the extra-judicial mental examination and deposition of the putative witnesses for the state. He asserts that unless it appears probable such prospective state witness will be unable to attend the trial or hearing, the general law is that a defendant has no right to interview, depose or examine a state's witness prior to trial without the consent of the witness. The prosecutor points out that in the case *sub judice*, refusal of the witness was present, in that the guardian of Masur denied defense counsel the right to proceed with the requested clinical interview.[1]

The Rules of Criminal Procedure set forth when and under what circumstances the magisterial power may intervene so as to force one to give testimony. See, *e.g.*, Crim. R. 15 and 16. Such compulsory rules contain specific conditions which must be met in order to obtain, or to utilize, the testimony of a potential witness. Thus, while the Rules of Criminal Procedure and Rules of Evidence in limited instances provide that one may be subject to a subpoena, and required to speak extra-judicially at a place and date certain, one is otherwise free and need not speak either to the prosecutor or defense counsel.

Although Ohio has little case law on the subject, it would appear that the case law to be found in federal and other state jurisdictions is supportive of the general rule, as expressed by the prosecutor here, that a witness has a right not to be interviewed by the defendant in a criminal case prior to trial so long as the prosecuting attorney has not obstructed access to the witness. Accordingly, in *United States* v. *Rice* (C.A. 5, 1977), 550 F. 2d 1364, the court held at 1374:

"* * * All that a defendant is entitled to is *access* to a prospective witness. This right, however, exists co-equally with the witnesses' [*sic*] right to refuse to say anything. *United States* v. *Dryden*, 5 Cir. 1970, 423 F. 2d 1175, 1177, *cert. den.* 398 U.S. 950 * * * (1970). 'A government witness who does not wish to speak to or be interviewed by the defense prior to trial may not be required to do so.' *United States* v. *Benson*, 5 Cir. 1974, 495 F. 2d 475, 479."

Other federal cases in accord are *United States* v. *Brown* (C.A. 5, 1977), 555 F. 2d 407, 425, and *United States* v. *Fischel* (C.A.5, 1982), 686 F. 2d 1082, 1092. The emergent rule is, generally speaking, that no right of a defendant is violated when a potential witness freely chooses not to talk to him and that a witness may, of his own free will, refuse to be interviewed by either the prosecutor or the defense.

---

[1] Appended as Attachment "A" to the trial court's Entry Denying Motion for Independent Evaluation entered on September 7, 1984, is an unsworn handwritten statement by Masur's sister that states as "guardian" she did not wish to have him examined prior to testifying. There appears to have been no genuine dispute about her authority to speak on behalf of her brother; therefore, as did the court of appeals by way of footnote, we shall assume that she in fact spoke for Masur and that Masur may be deemed to have refused to submit to any pre-trial evaluation.

It would appear that many state courts also have followed this basic rule of criminal cases. See *Hill* v. *State* (Ala. Crim. App. 1978), 366 So. 2d 296, 312, affirmed (1979), 366 So. 2d 318; *People* v. *Cooks* (1983), 141 Cal. App. 3d 224, 330, 190 Cal. Rptr. 211, 287-288; *Corbett* v. *People* (1963), 153 Colo. 457, 477, 387 P. 2d 409, 420; *Matter of B.L.B.* (D.C. App. 1981), 432 A. 2d 722, 725; *Baxter* v. *State* (1985), 254 Ga. 538, 541, 331 S.E. 2d 561, 567; *People* v. *Peter* (1973), 55 Ill. 2d 443, 451, 303 N. E. 2d 398, 404, certiorari denied (1974), 417 U.S. 920; *State* v. *Conger* (La. App. 1986), 483 So. 2d 1100; *Commonwealth* v. *St. Pierre* (1979), 377 Mass. 650, 658, 387 N.E. 2d 1135, 1140; *Blair* v. *State* (Miss. 1984), 445 So. 2d 1373; *State* v. *Dodson* (Mo. App. 1977), 556 S.W. 2d 938, 953; *State* v. *Wilson* (1984), 311 N.C. 117, 125, 316 S.E. 2d 46, 52; *Heavener* v. *State* (Okla. Crim. App. 1985), 706 P. 2d 905, 908; *State* v. *York* (1981), 291 Ore. 535, 632 P. 2d 1261; *Graves* v. *State* (Tenn. Crim. App. 1972), 489 S.W. 2d 74, 81; *Kennedy* v. *State* (W. Va. 1986), 342 S.E. 2d 251; *Hopkinson* v. *State* (Wyo. 1981), 632 P. 2d 79, 144. We accept the aforementioned cases as stating the correct principles to follow. That, however, does not resolve the problem of how to insure a fair trial under the facts of this case. We believe these facts, within the following analysis, may provide the basis for a limited corollary to the above general rule.

The defendant here was charged with a series of sexual offenses involving a number of youths, including the victim-witness, David Masur. The defendant was found guilty of only one offense, *i.e.*, the sexual battery of Masur, which required that defendant knew Masur's capability was substantially impaired. More particularly, R.C. 2907.03 states:

"(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

"* * *

"(2) The offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired."

One of the claimed elements of the state's case was based upon Masur's inability to appraise the nature of, or control, his own conduct under the circumstances presented. The alleged "substantial impairment" of the victim's ability to reason and control his own conduct in this case was not based upon the use of alcohol, drugs, or other stimulation to the emotional system. Instead, the impairment was the result of an asserted mental retardation with which the young man had been afflicted for a good number of years. Therefore, the state's case was essentially that the defendant acted with knowledge of the victim's unfortunate condition, which condition was obvious to the defendant, and that he took advantage of such condition.

The phrase "substantially impaired," in that it is not defined in the Ohio Criminal Code, must be given the meaning generally understood in common usage. As cogently stated by the appellate court, substantial impairment must be established by demonstrating a present reduction,

diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report.

As previously stated, the prosecution presented expert testimony from Drs. Veatch and Lippert, both of whom had supervised the clinical evaluations of Masur. They stated their conclusions relative to his psychological condition to establish an element of the crime charged. At trial it was demonstrated that tests had been given to Masur purporting to measure his intelligence level as well as his social adaptive ability. Such tests were administered orally with answers written down by the test administrator, along with the particular rating of an answer. Neither of the testifying psychologists was the administrator of the underlying tests and could give no testimony regarding the particular responses of Masur or the relationship of the response to the written answer.

Furthermore, it is clear that those tests administered by Dr. Veatch were of Masur's mental and social capacities as they related to the ability to negotiate the special educational curriculum. She administered no test nor did she have any qualifications in the field of human sexual behavior. The evaluation of Masur's social skills was based on questions asked of his mother, with little if any independent verification and no opportunity for cross-examination by defendant. Dr. Lippert admitted that there had been no testing aimed at a determination of Masur's consensual capacity, *i.e.*, consent or voluntariness. Although he claimed to have validated the tests given, he could not testify as to which questions were actually asked to obtain particular answers, or whether Masur had responses other than those recorded.

The prosecution's experts testified about tests which resulted from one-on-one evaluations with Masur. Converse to this, the defendant's psychiatrist was not allowed to conduct any personal clinical examination or analysis of Masur or, presumably, to have any personal contact with him whatsoever. Defense counsel continuously objected to the trial court with regard to both the refusal of a clinical evaluation of Masur and the lack of first-hand, relevant observations upon which to predicate cross-examination.

It is argued that the defendant was being dealt with unfairly, *i.e.,* that although the state had the burden of proving Masur's inability to appraise or control his own conduct, the denial of an independent clinical analysis of Masur placed the defendant at a serious disadvantage in the preparation of his defense, having to rely only upon the clinical evaluations as utilized by the prosecution.

In this regard we are in agreement with the defense counsel and with the court of appeals. In our view, it could only have been fair to have either permitted defendant to develop such evidence for his defense, or to have denied the prosecution any use of that expert testimony applicable to the

contested and essential element of the crime. Accordingly, we fashion our holding and opinion here upon a very narrow basis, and with limited scope.

We recognize and approve of the general rule that a prosecution witness who will be attending the trial has the right to refuse an interview or deposition by the defense when the prosecution has not unduly interfered with the witness' free choice. However, when the mental condition of the victim-potential witness is a contested, essential element of the crime charged, the defense may move the court that the state be barred from utilizing evidence of such mental condition obtained in a clinical interview of the witness prior to trial unless the witness voluntarily agrees to a court-appointed, independent examination, with the results being made available to both sides.

Accordingly, the judgment of the court of appeals is affirmed, and this matter is remanded for a new trial in accordance with this opinion.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.