OPINION
[¶ 1] Defendant-appellant, Floyd Hillock, appeals from the judgment of the Harrison County Court of Common Pleas finding him guilty of rape following a bench trial.
[¶ 2] The facts as gleaned from the record are as follows. Appellant was a longtime family friend of Kendra, the alleged victim in this case. At the time of the offense, Kendra was age 15 and appellant was 77. Appellant spent a lot of time with Kendra as he did with Kendra's mother and brother. By appellant's own admission, he performed oral sex on Kendra seven to eight times and digitally penetrated her. He also admitted that she tried to perform oral sex on him but that, "it did no good." Apparently, appellant became upset when Kendra started sharing company with another man, and may have informed the police of such along with informing them of his own conduct.
[¶ 3] The Grand Jury of Harrison County indicted appellant on one count of rape in violation of R.C. 2907.02(A)(1)(c) on May 24, 2001. He proceeded to a bench trial on October 18, 2001. The court found appellant guilty as charged. In its judgment entry of March 6, 2001, the court sentenced appellant to three years incarceration. On June 20, 2002, the court entered a nunc pro tunc judgment entry correcting its March 6 judgment noting that the three-year prison term was mandatory. Appellant filed a timely notice of appeal on March 8, 2002.
[¶ 4] Appellant raises two assignments of error that are closely related; therefore, we will address them together. They state, in order:
 [¶ 5] "THE TRIAL COURT ERRED IN FINDING BEYOND A REASONABLE DOUBT THAT THE ALLEGED VICTIM'S ABILITY TO RESIST OR CONSENT WAS SUBSTANTIALLY IMPAIRED BECAUSE OF A MENTAL CONDITION."
 [¶ 6] "THE TRIAL COURT ERRED IN FINDING BEYOND A REASONABLE DOUBT THAT DEFENDANT KNEW OR HAD REASONABLE CAUSE TO BELIEVE THAT THE ALLEGED VICTIM'S ABILITY TO RESIST OR CONSENT WAS SUBSTANTIALLY IMPAIRED BECAUSE OF A MENTAL OR PHYSICAL CONDITION OR BECAUSE OF ADVANCED AGE."
 [¶ 7] Appellant argues that the trial court failed to find that the victim's ability to resist or consent was substantially impaired because of a mental condition as is required by R.C. 2907.02(A)(1)(c). He further argues that the evidence did not prove that the victim's ability to resist or consent was substantially impaired. Appellant compares this case to State v. Zeh (1987), 31 Ohio St.3d 99, in which the court noted that tests administered to an alleged rape victim did not relate to the alleged victim's sexual behavior or to his ability to consent. Appellant points our attention to the fact that, in this case, no tests were administered to the victim nor was any testimony presented relating to the victim's mental and social capacities as they related to consensual capacity. He argues that although the victim has a low I.Q., this does not prove "substantial impairment." Citing, Id.
[¶ 8] Appellant argues that plaintiff-appellee, the State of Ohio, failed to prove the victim was "substantially impaired;" but even if appellee did so, it failed to prove he knew or had reasonable cause to believe the victim's ability to consent or resist was substantially impaired. Appellant contends that he himself has a limited education (completing only the sixth grade); therefore, the victim's level of education would not be apparent to him. He also notes that the victim's outward appearance does not indicate any signs of her reduced mental abilities. Thus, he claims that appellee did not produce any evidence to demonstrate that he was aware of or should have been aware of Kendra's alleged substantial impairment. Finally, appellant asserts there was no evidence that the victim was susceptible to undue influence.
[¶ 9] Appellant basically asserts the evidence presented was insufficient to support the trial court's finding of guilt. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997),80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
[¶ 10] Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one the syllabus.
[¶ 11] Appellant was convicted of rape in violation of R.C.2907.02(A)(1)(c), which provides:
 [¶ 12] "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 [¶ 13] "* * *
 [¶ 14] "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
 [¶ 15] Thus, appellee was required to prove five elements: (1) appellant engaged in sexual conduct; (2) with another, not his spouse; (3) substantial impairment of the other's ability to resist or consent; (4) due to a mental condition; and (5) appellant knew or had reasonable cause to believe that the other person's ability to resist or consent was substantially impaired due to a mental condition.
[¶ 16] The parties stipulated by way of a joint exhibit that the sex acts occurred. (Tr. 3-5). They submitted appellant's statement to the police in which he stated, "I started having sex with Kendra Brown about 6 months ago in Pineyfork. * * * We had oral sex. She tried to give oral sex but it did no good. I gave her oral sex 7 or 8 times, I don't remember. Sex was in Blairmont Rd. Stuck finger not even an inch in her. * * *." At no time did appellant deny the sex acts. The only issues at trial were: (1) whether Kendra's ability to resist or consent was substantially impaired because of a mental condition; and (2) whether appellant knew or had reasonable cause to believe that Kendra's ability to resist or consent was substantially impaired because of a mental condition.
[¶ 17] As to whether appellee proved that Kendra's ability to resist or consent was substantially impaired by a mental condition, the following testimony is relevant.
[¶ 18] Kendra's mother, Georgia Stergios, testified that Kendra has been enrolled in developmentally handicapped (DH) classes since first grade when she was held back a year. (Tr. 10). She stated that appellant taught Kendra to tell time when she was 14 years old. (Tr. 12). Ms. Stergios indicated she taught Kendra to drive on back roads. (Tr. 12-13). Ms. Stergios testified that Kendra can read some things out of the newspaper and reads Little Golden books. (Tr. 13). She stated that Kendra has friends her own age and enjoys playing Nintendo and Play Station. (Tr. 13). Ms. Stergios noted that she often has to keep pushing Kendra to do her chores or she will not do them. (Tr. 11). However, Ms. Stergios testified that this could be teenage rebelliousness. (Tr. 16). Before this incident, Ms. Stergios stated, Kendra had not been in any trouble and she understands the difference between right and wrong. (Tr. 17). She indicated that Kendra rides the bus to and from school and spends time with friends in the neighborhood. (Tr. 18).
[¶ 19] Rebecca Hajiran, Kendra's school psychologist, testified to the following. Ms. Hajiran conducted several tests on Kendra, including an I.Q. test. An average I.Q. is 100, with anything between 90 and 110 falling in the average range. (Tr. 26). A person with an I.Q. of 80 to 90 is below average. (Tr. 26). A person with an I.Q. of 70 to 80 is borderline. (Tr. 27). A person with an I.Q. of 69 or below is considered significantly impaired or mentally retarded. (Tr. 27). Kendra's I.Q. was 64 plus or minus six; thus, she is considered mentally retarded. (Tr. 26-28). Kendra scored a 73 on the vocabulary portion of the test and a 61 on the non-verbal reasoning portion. (Tr. 28-30). Kendra's scores indicated that 96 percent of children her age scored higher than her in vocabulary and 99 percent of children her age scored higher than her in the non-verbal reasoning. (Tr. 30). Her scores suggested that Kendra was performing at the high third grade level. (Tr. 33). Ms. Hajiran also indicated that Kendra's judgment and reasoning skills were comparable to those of a high third grade student. (Tr. 34). Ms. Hajiran testified that a person with an I.Q. of 64 would never mature to their chronological age. (Tr. 38). She testified that at the time of testing, Kendra was 14 years old but mentally she was functioning like a ten-year-old. (Tr. 38).
[¶ 20] Kendra testified next. She stated that in school she was making a Halloween bat, painting a picture on the government about the terrorists, dividing numbers into other numbers, and studying the government. (Tr. 45-47). She stated that she works in the cafeteria washing and drying trays. (Tr. 47). Kendra testified she enjoys playing video games and that she stays at home a lot. (Tr. 50, 52).
[¶ 21] As stated previously, this case turns in part on whether or not Kendra's ability to resist or consent was substantially impaired by a mental condition. The phrase "substantially impaired" is not defined in the statute. The Ohio Supreme Court has defined the phrase by stating, "* * * substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." Zeh, 31 Ohio St.3d at 103-104. "Substantial impairment" need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct. State v. Tate (Oct. 26, 2000), 8th Dist. No. 77462.
[¶ 22] The evidence presented demonstrated that Kendra is mentally retarded and will never reach her chronological age in terms of her maturity level. It also demonstrated that Kendra enjoys spending her free time partaking in the activities of a younger child, such as reading Little Golden books and playing video games. Presumably, an average 16-year-old[1] girl would be more interested in school, dating and social events. Additionally, it is interesting to note that when asked what she wanted to be after high school, Kendra stated that she wanted to be a veterinarian. (Tr. 50). This demonstrates that she is not cognizant of her own mental condition and the limits it places on her. Ms. Hajiran, the school psychologist, testified that someone with an I.Q. of 64, like Kendra, would probably have a maintenance/housekeeping type of job and would most likely not even be able to complete a med tech or nurses aide program at the joint vocational school. (Tr. 37-38).
[¶ 23] Furthermore, after reading Kendra's testimony, it is apparent that she is slower than the average 16-year-old. Her answers appear simple and consist of a lot of "yeah's" and "uh-huh's." The trial court was able to observe Kendra's behavior and listen to her responses in order to form its opinion of Kendra's mental ability. Such is a vast advantage the trial court holds over our court in cases such as this when the court's observations of the victim-witness are crucial.
[¶ 24] Additionally, appellant relies heavily on Zeh, supra, to support his position. However, although Zeh touched on the issue of what constituted "substantial impairment," its holding was limited to instructing when the defense could ask the court to bar the state from utilizing evidence of the contested mental condition of a victim-potential witness. Id. at 105.
[¶ 25] Based on the above testimony, appellee presented sufficient evidence from which the court could determine that Kendra's ability to resist or consent was substantially impaired. Accordingly, appellant's first assignment of error is without merit.
[¶ 26] The next issue we must determine is whether appellee demonstrated that appellant knew of or had reason to believe Kendra's ability to consent or resist was substantially impaired. The following testimony is pertinent to this determination.
[¶ 27] Ms. Stergios testified that appellant has known Kendra since she was three years old. (Tr. 9). She also stated that appellant knew Kendra was in DH classes. (Tr. 11). Kendra testified that appellant spent time with her, took her places, visited her house and talked with her and her brother. (Tr. 48-49).
[¶ 28] Appellant testified that he completed up to the sixth grade in school while he was in a children's home. (Tr. 60). He testified that he has helped Kendra's family with work around the house and has brought them food. (Tr. 58-59). He stated that sometimes Kendra came to his house by herself and other times she came with her mother and brother. (Tr. 58-59). Appellant demonstrated he knew a sexual relationship with Kendra was wrong when he testified that occasionally Kendra would take a bath at his house and walk out of the bathroom naked and stand in front of him. (Tr. 59). He would then warn her that her mother was coming in the house and she would run back in the bathroom. (Tr. 59). He also stated that Kendra would sleep on his couch and become scared so she would come into his room and sleep at the foot of his bed. (Tr. 60).
[¶ 29] Appellant further testified that he talked to Kendra, she mowed his grass, they watched television together and he taught her to drive and tell time. (Tr. 60-61). He testified he did not know much about her schoolwork. (Tr. 61). Appellant stated that Kendra handled driving the car fine. (Tr. 61). He stated that when they were talking or when he asked her to do something, she understood what he was talking about. (Tr. 61). Appellant further testified that Kendra did not do whatever she was told and only did what she wanted to do. (Tr. 62). Appellant did mention a time when he commented to Ms. Stergios that Kendra was "kind of stupid" and Ms. Stergios responded that, "[n]o, she's just slow." (Tr. 62). Appellant stated that he had thought Kendra was stupid because of the way she acted when someone got hurt; Kendra would stand there and laugh at them. (Tr. 62).
[¶ 30] On cross-exam, appellee asked appellant if he thought it was odd that a 14-year-old could not tell time. Appellant responded, "No, I know a lot of people — even adults don't know how to tell time." (Tr. 64). When asked if he ever helped Kendra with her school work, appellant replied that he showed her a few things but, "I can't show her too much cause I don't have any education myself." (Tr. 67).
[¶ 31] After reading appellant's testimony, it appears he has limited communication skills, which could be due in part to a limited education and old age. The answers he gave were often rambling and unresponsive to the questions posed. For example, when asked how long he has known Kendra, appellant stated he met her when she was 14. (Tr. 66). However, the other testimony revealed that he has known Kendra since she was a toddler. When asked could it have been sooner, appellant replied, "No, no, no, no, no. My wife died — let's see in `96 I think it was and we was — well, my wife and my youngest daughter would go down to their house and then after that — well, before, that my boy — I don't think he knew her. And then this boy got killed on a motorcycle down there and my wife died and the two girls they were mad at me so I didn't have nobody around so I went over and I asked to help Georgie to fix her house up and stuff like that, and she kicked her boyfriend out, Kendra's and Bubby's dad, and she went with Stergios and I don't know it just seemed Sturgess was trying to make things that she didn't want to do and I was down there helping them. When he moved he was sent up to — I don't remember." (Tr. 66-67). Another example is when appellant was asked if he ever hurt Kendra. He replied, "No. I don't know, there's something between her and her mother. I don't know what it was, but when I was down there doing work for them, she said, `It's boring here. Can I go up to your place?' And I said, `Well you got friends down here.' She said, `It's boring.' I don't know what was wrong cause she had a couple of friends there in Piney Fork; she had some in Adena, Smithfield." (Tr. 63).
[¶ 32] Statements such as these demonstrate appellant's lack of education and communication skills. However, appellee presented other evidence that established appellant knew or should have believed that Kendra's ability to resist or consent was substantially impaired by a mental condition. Most importantly, since the trial court had the opportunity to observe both appellant and Kendra, it was able to make a determination of whether appellant knew or should have believed that Kendra's ability to resist or consent was substantially impaired. The trial court had a superior view of the evidence in this case since it was in the position to view appellant not only on the witness stand, but also throughout the proceedings. Additionally, the court was able to determine appellant knew of Kendra's substantially impaired abilities from several factors. Appellant has known Kendra and her family for most of Kendra's life. By both appellant's and Kendra's testimony, they have spent a great deal of time together. They watched television together, she did some chores for him and he helped her mother with household maintenance. Ms. Stergios testified appellant knew Kendra was in developmentally handicapped classes. As the trial court noted, appellant "knew the victim over a period of years and was able to observe and interact with her over a substantial period of time and on a number of occasions." In addition, appellant thought Kendra was "kind of stupid" and was aware she was "slow" because her mother advised him of such. Finally, appellant testified as to Kendra's inappropriate actions such as walking out of the bathroom naked and sleeping at the foot of his bed.
[¶ 33] Although appellant may not have had the intellect to fully understand Kendra's mental condition, sufficient evidence exists on the record from which the court could have found that appellant knew or had reason to believe that Kendra's ability to resist or consent was substantially impaired by a mental condition. Thus, appellant's second assignment of error is without merit.
¶ 34 For the reasons stated above, the decision of the trial court is hereby affirmed.Judgment affirmed.
Vukovich and Waite, JJ., concur.
[1] Kendra was 16 at the time of the hearing.