[Cite as *State v. Cedeno*, 2013-Ohio-821.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98500**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# NOEL CEDENO

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548513

**BEFORE:**   S. Gallagher, P.J., E.A. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   March 7, 2013

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, OH   44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Scott Zarzycki
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, P.J.:

{¶1} Appellant, Noel Cedeno, appeals his convictions for rape and sexual battery.[1] For the reasons stated herein, we affirm.

{¶2} Appellant was indicted on one count of kidnapping, two counts of rape, and two counts of sexual battery. The indictment also included various specifications and notices of prior conviction. Appellant entered a plea of not guilty to the indictment, and the case proceeded to a bench trial.

{¶3} At trial, testimony and evidence was presented concerning events that occurred over the night of March 18-19, 2011. The victim is the best friend of appellant's wife Brenda. The two were having drinks at Brenda's house while Brenda's children were sleeping upstairs. Appellant was working that day with the victim's then boyfriend, and they arrived later that night. The men asked if the women were okay, and they indicated they were fine. The victim decided to stay for the night, and appellant drove the victim's boyfriend home.

{¶4} The victim testified that she had ingested marijuana before going to Brenda's house. She and Brenda drank an entire bottle of vodka together. When appellant returned from dropping off the victim's boyfriend, he brought back three bottles of tequila. The victim had two full shots of the tequila plus part of a third shot. Appellant then brought out cocaine, and the victim, who stated she had never tried it, took a couple of hits. The victim testified she "didn't feel right" and then she went to sleep on the

---

[1] We note that appellant testified to his name as being "Noel Cedeno Diaz."

couch.  She borrowed a pair of basketball shorts to sleep in for the night.  She testified she was asleep by 1:00 a.m.

{¶5} The victim further testified that she was awakened around 5:15 a.m. when she felt her body "jerking back and forth" from appellant penetrating her vagina.  The victim was on her stomach, and appellant was on top of her.  She pushed appellant off and told him, "you're sick."  She thought about waking up Brenda but remembered that the children were sleeping.  She testified that appellant kept repeating, "please don't mess up my marriage."

{¶6} The victim ran out of the house, leaving her jeans behind, and walked quickly 11 blocks to her home.  Appellant chased her in his car, and at one point the victim fell and scraped her knee.  When she arrived home, the victim ran inside and told her boyfriend she had just been raped.  Her boyfriend called 911.  On the 911 call, the victim can be heard crying and sounds distraught.

{¶7} The victim was interviewed by the police and taken to a hospital.  The responding officer, Carmen Hernandez, testified that the victim was highly upset.  The nurse at the hospital, Barbara Gifford, noted the victim's emotional status as "crying uncontrollably."  She eventually calmed down on her own.  A rape-kit examination was performed.  While the examination did not reveal injury to the victim's genitalia, the nurse testified that this was not uncommon.  Fresh abrasions were found on the victim's knees.

{¶8} The victim conceded that on a prior occasion she had accused appellant of making calls to her pretending to be an ex-boyfriend who she claimed had stalked her. She later apologized when she found out it was not appellant who made the calls. The victim also conceded that she has a high tolerance and testified that she was in control when she fell asleep. She adamantly denied that the sex with appellant was consensual.

{¶9} Brenda testified that she and the victim had been drinking before appellant arrived home with the victim's boyfriend. She stated that the victim was having problems with her boyfriend and wanted to stay at her house that night, which she had done in the past. Brenda admitted that appellant came home with more alcohol, including tequila. She denied the use of drugs that evening. She and appellant went upstairs to bed, and the victim went to sleep on the couch in a pair of shorts provided by appellant. The next thing Brenda remembered was the police knocking on her door around 6:30 a.m. While she opened the door, appellant was getting dressed. The first thing appellant did when Brenda asked what happened was to put $1,000 and a lawyer's card on the table and say, "call a lawyer." When she inquired further, appellant said, "ask your friend." She stated appellant mentioned something to the effect that "it was consensual" or "she enticed him"; however, Brenda did not witness any enticing that night. She testified that she was a light sleeper and would have noticed if her husband got out of bed. About a month later, appellant confessed to her that he had sex with the victim. When asked about the victim previously having stated things that were not true of appellant, Brenda indicated, "just once."

{¶10} Appellant's mother and a cousin testified for the defense. The cousin described the victim as having a history of drinking and drug use, including the use of cocaine and marijuana. However, the cousin had not seen the victim in two or three years.

{¶11} Appellant testified in his own defense. He described Brenda and the victim as being heavy drinkers with some drug use, including cocaine. He stated that there was a time, which was about two years ago, when the victim had accused him of making phone calls to her saying he wanted to have sex with her, but that the victim later discovered it was not appellant and apologized. He claimed that he told Brenda that he did not want the victim in their home.

{¶12} On the night in question, appellant arrived home from work with the victim's boyfriend. He testified that Brenda and the victim were already drinking and getting high and that the victim wanted to stay over because she was having problems with her boyfriend. After taking the boyfriend home, appellant returned with some liquor that he claimed the women had asked him to get. He described the women as using drugs "like every 10, 15 minutes." He indicated that he got "a little bit" drunk and had about ten beers that day in total. He described the victim as being "very hyper" from doing drugs.

{¶13} Appellant testified that he went to bed with Brenda around 1:45 a.m. and the victim stayed on the couch. He had given the victim clothes to wear to bed. He testified that around 2:15 a.m., the victim was in front of the stairs calling his name and asking,

"where is the rest of the drugs?" He claimed he went downstairs to show her and, after she finished doing more drugs, she asked him to sit by her. He testified that she then pulled his pants down and they had sex for five or six minutes, and then he got nervous that Brenda would come down. He went back upstairs to bed and awoke at 6:00 a.m. to let the dog out. When he saw the victim was no longer there, he got in his car to look for her. He claimed he found her in front of a store and yelled, "where are you going?" to which she said, "you will know about me now." He then went home and back to bed. A little later, the police arrived.

{¶14} After appellant was taken to the police station, he read his *Miranda* rights in Spanish, and the police questioning was recorded. It was evident that appellant expressed a desire to speak with a lawyer, yet the questioning continued. Therefore, at trial, the trial court sustained an objection to the use of appellant's statements on the recording.

{¶15} The trial court found appellant guilty of rape under Count 3 (R.C. 2907.02(A)(1)(c)) and sexual battery under Count 5 (R.C. 2907.03(A)(2)), and acquitted him of all specifications and the other charges. After merging Count 5 into Count 3, the trial court sentenced appellant to a five-year prison term.

{¶16} Appellant timely filed this appeal, raising two assignments of error for our review. Under his first assignment of error, appellant claims the trial court erred when it denied his Crim.R. 29 motion for acquittal.

**{¶17}** A motion for judgment of acquittal under Crim.R. 29(A) requires a court to consider if the evidence is insufficient to sustain a conviction. When reviewing a claim of insufficient evidence, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "[A] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.

**{¶18}** Rape is defined under R.C. 2907.02(A)(1)(c) as follows:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * *

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

**{¶19}** Sexual battery is defined under R.C. 2907.03(A)(2) as follows:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when * * *

(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

{¶20} In *State v. Zeh*, 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414 (1987), the Ohio Supreme Court held that the state may establish substantial impairment at trial through evidence showing a reduction or decrease in the victim's ability to act or think. Voluntary intoxication is a "mental or physical condition" that could, at times, cause substantial impairment. *State v. Theodus*, 8th Dist. No. 97290, 2012-Ohio-2064, ¶ 8.

{¶21} R.C. 2901.22(B) defines "knowledge" as follows:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶22} In this case, the victim's testimony reflects that she consumed large quantities of alcohol and ingested drugs. She had done marijuana before going to Brenda's home and continued to split an entire fifth of vodka with Brenda. Appellant testified that the victim and his wife were already drinking and getting high when he arrived home around 10:00 p.m. After taking the victim's boyfriend home, appellant returned with more alcohol. The victim did shots of tequila and, as appellant testified, the victim was doing cocaine every ten to fifteen minutes. Appellant had described the victim as being "hyper." While the victim testified she had a high tolerance and was in control, the evidence reflects that she fell asleep after consuming a large amount of drugs and alcohol. She testified that she did not feel right when she went to sleep on the couch and she did not awaken until she felt the "jerking" movement of her body.

{¶23} Upon this evidence, we find sufficient evidence was presented to prove both that the victim was "substantially impaired" at the time of the sexual conduct and that appellant was aware of her condition. Moreover, after viewing the evidence in a light most favorable to the prosecution, we conclude any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Appellant's first assignment of error is overruled.

{¶24} Under his second assignment of error, appellant claims his convictions are against the manifest weight of the evidence. When reviewing a claim challenging the manifest weight of the evidence, the court, after reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*.

{¶25} In this matter, the state produced evidence showing that the victim had been heavily drinking and doing drugs; she did not feel right and fell asleep on appellant's couch; she was substantially impaired and appellant was aware of her condition; she awoke to find appellant penetrating her; and she pushed the appellant off and told him, "you're sick." After this occurred, the victim ran out of the home and walked quickly 11

blocks to her house; she fell and scraped her knee along the way; she told her boyfriend she had just been raped; she was crying and distraught on the 911 call; and she was taken to the hospital where her emotional status was noted as "crying uncontrollably." While there were some inconsistent or conflicting assertions concerning the incident, we recognize that the trier of fact was able to consider the credibility of the individual witnesses and reach a conclusion based on the totality of the evidence.

{¶26} After reviewing the entire record and weighing the evidence and all reasonable inferences, including the credibility of the witnesses, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's second assignment of error is overruled.

{¶27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR