[Cite as *In re A.W.*, 2014-Ohio-4952.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN RE: ANDREW W. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 13-CA-24 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Juvenile Division, Case Nos.
2121387 and 2131207



JUDGMENT:        Affirmed



DATE OF JUDGMENT:        November 6, 2014



APPEARANCES:

For Appellee

JOSEPH D. SAKS
117 East High Street
Suite 234
Mount Vernon, OH  43050

For Appellant

CHARLYN BOHLAND
250 East High Street
Suite 1400
Columbus, OH  43215

*Farmer, J.*

{¶1}   On December 6, 2012, a complaint was filed against appellant, Andrew W., a juvenile, age sixteen, alleging he was a delinquent child for committing two counts of rape in violation of R.C. 2907.02 and one count of violating the liquor-control law in violation of R.C. 4301.69 (Case No. 2121387).  Said charges arose from an incident involving appellant and a sixteen year old girl, M.S.

{¶2}   On January 10, 2013, appellant raised the issue of his competency.  By journal entry filed January 15, 2013, the trial court ordered a competency evaluation.  The evaluation was performed on January 29, 2013, and a report was filed on February 11, 2013.  A competency hearing was never held and a competency determination was never made.

{¶3}   On June 7, 2013, a second complaint was filed against appellant, alleging he was a delinquent child for committing two counts of gross sexual imposition in violation of R.C. 2907.05 and one count of tampering with evidence in violation of R.C. 2921.12 (Case No. 2131207).  These charges arose from the same incident involving Mary S.

{¶4}   A trial commenced on June 24, 2013.  The trial court adjudicated appellant delinquent of one of the rape counts, the liquor-control law violation, one of the gross sexual imposition counts, and the tampering count.  The trial court dismissed the forcible rape and forcible gross sexual imposition counts.  By journal entry filed July 10, 2013, the trial court committed appellant to the Ohio Department of Youth Services for a minimum aggregate term of one year to a maximum term until his twenty-first birthday.

{¶5}    Appellant filed an appeal.  This court reversed and remanded the matter to the trial court to conduct a competency hearing and issue a written determination.  *In re: Andrew W.,* 5th Dist. Knox No. 13-CA-24, 2014-Ohio-1576.  The trial court held the hearing and by journal entry filed September 3, 2014, found appellant had been competent to stand trial.  No appeal was taken from this decision.

{¶6}    By judgment entry filed October 30, 2014, this court reopened the case to address the remaining assignments of error:

II

{¶7}    "THE JUVENILE COURT VIOLATED ANDREW'S RIGHT TO DUE PROCESS OF LAW WHEN IT ADJUDICATED HIM DELINQUENT IN THE ABSENCE OF SUFFICIENT, CREDIBLE, AND COMPETENT EVIDENCE, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29(e)(4)."

III

{¶8}    "ANDREW WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW WHEN HE WAS ADJUDICATED DELINQUENT OF R.C. 2907.02(A)(1)(c) AND R.C. 2907.05(A)(5) BECAUSE THE STATUTES FAIL TO PROVIDE GUIDELINES DESIGNATING WHICH ACTOR IS THE VICTIM AND WHICH IS THE OFFENDER, AND RESULTS IN THE ARBITRARY AND DISCRIMINATORY ENFORCEMENT OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16, OF THE OHIO CONSTITUTION."

IV

{¶9}  "ANDREW WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

II

{¶10}  Appellant claims the findings of delinquency for rape and gross sexual imposition were against the sufficiency of the evidence.  We disagree.

{¶11}  On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979).

{¶12}  Appellant was found delinquent of rape in violation of R.C. 2907.02(A)(1)(c) which states:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of

advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

{¶13} "Sexual conduct" is defined in R.C. 2907.01(A) as:

[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶14} Appellant was also found delinquent of gross sexual imposition in violation of R.C. 2907.05(A)(5) which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired

because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

{¶15} "Sexual contact" is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶16} As explained by the Supreme Court of Ohio in *State v. Zeh,* 31 Ohio St.3d 99, 103-104 (1987):

The phrase "substantially impaired," in that it is not defined in the Ohio Criminal Code, must be given the meaning generally understood in common usage. As cogently stated by the appellate court, substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report.

{¶17} Appellant argues there was a lack of proof that he had sexual conduct/contact with the victim, M.S., or that she was substantially impaired.

{¶18} The testimony was consistent. Three minors, appellant, M.S., and her friend, D.S., together with an eighteen year old, Matthew Adams, were drinking hard liquor mixed with Pepsi. T. at 50-51, 71, 152, 219-220. D.S. and appellant are siblings. T. at 49. All consumed enough alcohol to cause them to be intoxicated. Appellant drank until he vomited, had slurred speech and glassy eyes, and had trouble navigating. T. at 52, 77, 128, 155, 222, 240. M.S. was very intoxicated, and was described as being "passed out" and unable to stand or walk, and had a very strong odor of alcohol about her person. T. at 17-18, 26-27, 35-36, 44.

{¶19} Police and EMT were called to assist. They testified they found M.S. outside on the ground, upset, combative, with red, glassy eyes and an odor of alcohol about her person. T. at 65-66, 75-76, 125-126, 131, 146-147, 151, 170-172, 177-178. M.S. was yelling "leave me alone" and "get away from me," and was nonresponsive. T. at 19-20, 36, 76, 170. The officers and the EMT opined M.S. was definitely intoxicated. T. at 66, 126, 131, 171.

{¶20} M.S. was taken to the hospital in restraints. T. at 22, 76, 171. The S.A.N.E. nurse, Kelly Dailey, testified M.S. was vomiting, disheveled, inconsolable, yelling, crying, calling for her parents, upset, thrashing, screaming, smelled of alcohol, and was unable to follow verbal commands. T. at 90-91, 93, 100. Nurse Dailey described her as "not coherent" and saying "I told them, no, daddy please. I said it burned my throat, but they said to drink." T. at 98, 115. M.S.'s blood alcohol content was 0.182. T. at 109; State's Exhibit 9.

{¶21} The evidence is more than sufficient to establish that M.S. was obviously intoxicated and substantially impaired as she was combative, nonresponsive, had a total lack of control, and was unable to navigate and follow orders.

{¶22} When questioned by the police, appellant first claimed he was asleep, passed out. T. at 69, 129. He stated M.S. was already drunk when she arrived, and then admitted they all had been drinking. T. at 129-130. Appellant changed his story "at least half a dozen" times. T. at 130-133. He finally admitted to being in bed with M.S. and there was a good possibility he had had sex with her. T. at 68-69, 132-133.

{¶23} D.S. testified M.S. had not been drinking before her arrival. T. at 218. D.S. went to the bathroom and when she came out, everyone was upstairs. T. at 227, 242. She heard something that sounded like "stop" while downstairs and proceeded upstairs where she heard "sexual noises." T. at 230, 242. D.S. observed appellant and M.S. naked in the bed with appellant on top of M.S. T. at 227-228, 246, 249-250. D.S. told appellant to get off of M.S. T. at 227. Mr. Adams pushed D.S. from the room and they went downstairs. T. at 71-72, 228-229, 247. Appellant then came downstairs and Mr. Adams went back upstairs. T. at 229, 244, 247. D.S. told the police appellant and M.S. were having sex when she walked into the bedroom. T. at 145, 233. D.S. opined that M.S. was flirting with appellant, kissing him, and wrapping her legs around him before the bedroom encounter. T. at 239.

{¶24} While outside on the ground, M.S. was without her underwear. T. at 18-20, 126. Her underwear was found in appellant's bedroom, along with her clothing. T. at 73, 136; State's Exhibits 2-5.

{¶25} M.S. remembers going upstairs, but remembers nothing about the activities in the bedroom, except hearing D.S. scream "stop, that's my friend." T. at 53-54. M.S. did not remember leaving the house or going to the hospital. T. at 55. The first thing she remembered was waking up in her own bed and thinking it was a dream. *Id.* Everything was a "fuzzy memory." *Id.*

{¶26} During the S.A.N.E. examination, Nurse Dailey noted abrasions to M.S.'s right breast, upper arms, left knee, cervix, and posterior fourchette. T. at 100-102, 116-117; State's Exhibit 8.

{¶27} Forensic evidence established the presence of semen in M.S.'s vagina and anus. T. at 187-188, 193; State's Exhibit 14. After DNA analysis, a skin stain swab from M.S.'s right breast was identified as a mixture, consistent with contributions from M.S., appellant, and Mr. Adams (ratio 1 to 49,880). T. at 200- 201, 203, 208, 212, 214; State's Exhibit 15. Appellant and Mr. Adams could not be excluded as contributors. T. at 203, 212. The DNA profile from the vaginal swabs was consistent with M.S., and a minor profile was present, but "it wasn't of sufficient quantity or quality to make a comparison to any of the other individuals involved." T. at 201. M.S. testified the last time she had engaged in sex was with her ex-boyfriend "[a]bout a year" ago. T. at 56.

{¶28} Given the testimony of D.S., corroborated with the S.A.N.E. examination and the forensic evidence, we find sufficient credible evidence of appellant's sexual conduct/contact with M.S.

{¶29} Assignment of Error II is denied.

III

{¶30} Appellant claims his prosecution was arbitrary, discriminatory, and violated his right to due process as R.C. 2907.02(A)(1)(c) and 2907.05(A)(5) produce unjust results when it permits prosecution of any one of two substantial impaired teenagers. We disagree.

{¶31} We note appellant never raised this issue to the trial court. Appellant urges this court to review this assignment under a plain error standard. *In re M.D.,* 38 Ohio St.3d 149 (1988). An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶32} The central issue of this assignment is whether there was evidence that both he and M.S. were so impaired that neither could be labeled the victim or the offender.

{¶33} There was ample testimony that appellant at first attempted to cover up what had happened in his discussions with M.S.'s stepfather, trying to blame Mr. Adams, and changed his story "at least half a dozen" times. T. at 20-21, 26-27, 31, 130-133. Further, appellant and Mr. Adams were observed by a neighbor purposefully hiding evidence (liquor bottles). T. at 166-167. This evidence was later found by the police. T. at 134-135; State's Exhibit 1.

{¶34} From the evidence presented, we find no arbitrary or discriminatory prosecution of appellant or plain error.

{¶35} Assignment of Error III is denied.

IV

{¶36} Appellant claims he was denied the effective assistance of trial counsel because his counsel was deficient in not objecting to his adjudication. We disagree.

{¶37} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

> 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶38} The right of appellate counsel and recourse to this court negates appellant's position.

{¶39}  At the close of the state's case-in-chief, defense counsel argued a Crim.R. 29 motion for acquittal, and presented an effective closing argument.  T. at 253-254, 269-277.  Upon review, we find no deficiency of trial counsel.

{¶40}  Assignment of Error IV is denied.

{¶41}  The judgment of the Court of Common Pleas of Knox County, Ohio, Juvenile Division is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Baldwin, J. concur.

SGF/sg 1030